IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ABEBE GELLAW<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br>YOUTUBE, LLC,<br>ALPHABET, INC,<br>XXVI HOLDINGS, INC,<br><br>Defendants. | Civil Action No. 1:25-cv-01602 (RDA/IDD) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (the "Motion") (Dkt. 14). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is ripe for disposition. Considering the Motion together with the Defendants' Memorandum in Support (Dkt. 15),[1] this Court GRANTS the Motion for the reasons that follow.

[1] Plaintiff did not file an Opposition to the Motion to Dismiss, but he did file a Motion to Strike which did not substantively address any of the arguments raised by Defendant. Dkt. 14. Nonetheless, the Court has analyzed the substantive merits of Defendant's argument. *See Guzman v. Acuarius Night Club LLC*, 2026 WL 406093, at *3-4 (4th Cir. Feb. 13, 2026) (reversing district court because "Rule 12(b)(6) simply does not provide for any such default relief").

# I. BACKGROUND

## A. Factual Background[2]

This case arises from a dispute between Plaintiff Abebe Gellaw ("Plaintiff") and Defendants Google, LLC, YouTube, LLC, Alphabet, Inc., and XXXVI Holdings, Inc. Dkt. 1 at 1. Plaintiff alleges that he is a resident of Spotsylvania County, Virginia, an investigative journalist, and human rights advocate with a Master of Laws (LLM) from George Mason University's Antonin Scalia Law School. *Id.* ¶ 9. Alphabet, Inc. is a Delaware corporation with principal place of business in California serving as parent holding company. *Id.* ¶ 10. Google, LLC is a Delaware limited liability company with principal place of business in California. *Id.* ¶ *11.* It is wholly owned by XXVI Holdings Inc. and operates globally dominant products and services including Search, Chrome browser, Android OS, and the largest online advertising platforms. *Id.* YouTube, LLC is a Delaware limited liability company that exists as the "survivor" entity of the merger between YouTube Inc. and Google Inc. *Id.* ¶ 12.

Plaintiff alleges that the relevant market is online video search, streaming, and advertising. *Id.* ¶ 18. He asserts that YouTube is Google's video department. *Id.* He alleges that YouTube is not merely a social media platform but the world's second-largest search engine after Google; it has 2.7 billion monthly active users and is the second-most-visited website in the world. *Id.* He further alleges that YouTube is also integrated with Google's infrastructure. *Id.* YouTube functions as a search engine where users actively query for specific content. *Id.* Plaintiff asserts that, according to YouTube's own April 2025 reports, there are 20 billion videos on the platform

[2] For the purpose of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

with 500 hours of video uploaded every minute—a scale that dwarfs any market competitor. *Id.* ¶ 19.

On September 4, 2023, Plaintiff alleges that he received an email that offered him a business opportunity after passing the threshold of 4,000 hours of views and one thousand subscribers. *Id.* ¶ 20. The email read "Welcome to the YouTube Partner Program. . . . You did it. EVN for Ethiopia! You've been accepted into the YouTube Partner Program, which means you can now earn money from your content and take advantage of additional benefits like expanded copyright protection tools and access to our Creator Support team." *Id.* Plaintiff asserts that the YouTube Partner Program ("YPP") Terms uses variations of "partner" throughout 38 times, explicitly defining partnership through revenue shares:

> YouTube will pay you 55% of Net Revenues from ads displayed or streamed by YouTube or an authorized third party; (a) on your Content Watch Pages; or (b) in conjunction with the playback of your Content within the YouTube Video Player. YouTube will pay you 55% of the Net Revenues from subscription fees that are attributed to the monthly views or watchtime of your Content.

*Id.* ¶ 21. Yet, Plaintiff asserts that buried in separate terms on a different website, Google.com, the mandatory Google AdSense Terms says: "This Agreement does not create any partnership, joint venture, or agency relationship between you and Google." *Id.* ¶ 22. The AdSense Terms further declare: "The AdSense Terms are our entire agreement relating to your use of the Services and supersede any prior or contemporaneous agreements on that subject." *Id.* Plaintiff claims this means every representation of "partnership" in the YouTube Partner Program is nullified by the mandatory terms of Google AdSense tied to the service. *Id.* The YPP terms state: "Where there is any conflict between these Base Terms and: (i) a Module, the Module will apply; and (ii) the AdSense terms, these Base Terms will apply." *Id.* ¶ 23.

Plaintiff asserts that the YPP promises "YouTube will pay you," all payments originating from Google AdSense. *Id.* ¶ 30. Plaintiff states that tax forms are issued by XXVI Holdings Inc., an entity with no alleged contractual relationship with creators, identifying itself as "PAYER" on Form 1099-MISC and classifying payments as "royalties." *Id.* Plaintiff asserts that neither he nor other YPP content creators have a known contractual relationships with XXVI Holdings. *Id.* ¶ 31. Plaintiff alleges that this system of classifying payments as "royalties" or "revenue shares" creates an illusory promise. *Id.* ¶ 33.

On July 21, 2025, Plaintiff's EVN Media channel was terminated, presumably by YouTube. *Id.* ¶ 38. Plaintiff asserts that the termination notice provided no specific violations, and no examples of problematic content. *Id.* Plaintiff asserts that he appealed his termination and was denied with boilerplate language. *Id.*; Dkt. 2-7. Plaintiff alleges that the termination's basis was "circumvention," which he asserts is a policy punishing association with other terminated creators. Dkt. 1 ¶ 39. Google support agent ED and Manager Victoria confirmed Google would seize all pending earnings, claiming they would be "refunded to our advertisers" for advertisements already served. *Id.* Plaintiff alleges that the use of boilerplate language, various statements from support staff, and the volume of channels terminated reveals that AI systems make irreversible termination decisions without human review. *Id.* ¶ 41.

Plaintiff alleges that he spoke to many representatives from Google to prepare for this lawsuit. *See* Dkt. 1. Plaintiff also alleges that he repeatedly requested a copy of his signed YPP agreement that he believes YouTube stored. *See id.* ¶¶ 42–44. Members of Google's support team denied Plaintiff access to their copy of this agreement, saying it was their policy not to provide the document unless Plaintiff signed in the UK or EEA. *Id.* ¶ 43. Plaintiff alleges that this evidences

discrimination against American creators in violation of the Virginia Consumer Protection Act. *Id.*

Plaintiff also requested that YouTube provide him with downloads of his 320 videos so he may publish them on a competing website. *Id.* ¶ 45. Plaintiff asserts that a representative of YouTube replied to Plaintiff and informed him that their policy did not allow them to provide videos from terminated channels. *See* Dkt. 2-1. Plaintiff believes this is an unconscionable contract provision that unfairly restrains trade. *See* Dkt. 1 ¶ 45.

On August 1, 2025, Plaintiff alleges that he had an exchange with a support Agent. *Id.* ¶ 48. Plaintiff asserts that he stated: "We had over $1200 in the account. Now the data is deleted, and we have not been paid." *Id.* He asserts that the support agent said: "If your channel is terminated, or suspended from the YouTube Partner Program, you are then no longer entitled to earn any revenue under YouTube's channel monetization policies." *Id.* Further, Plaintiff asserts that the agent claimed that Google withholds "earnings and, when appropriate and possible, use them to refund advertisers or viewers for purchases." *Id.* Further, a manager later communicated "After a final review of your associated AdSense account, we have determined that the pending earnings are ineligible for payout and have been forfeited." *Id.* ¶ 50.

On September 20, 2025, Plaintiff alleges that a Google Support Agent named Ed and Manager Victoria confirmed the forfeiture. *Id.* ¶ 51. Plaintiff alleges that Ed claimed: "When channels are terminated, earnings are refunded to the Advertisers where those earnings are from." *Id.* Plaintiff asserts that, when Ed was asked to provide receipts and accounting, Ed replied: "Sorry but I do not have access to that information. And technically those earnings are not yours since your channel was terminated due to violation of our policy and it should be refunded to advertisers who paid for it." *Id.* Plaintiff asserts that Victoria echoed the same: "Any earnings already added

to your AdSense account will not be forfeited. However, all estimated earnings that have not yet been transferred to your AdSense account will be refunded to our advertisers." *Id.* Plaintiff characterizes this action as "private theft" and feels that the use of the term "forfeiture" indicated Defendant's bad faith intent. *Id.* ¶ 53.

In his Complaint, Plaintiff asserts eight counts: (1) abuse of monopoly power in violation of the Sherman Act; (2) restraint of trade in violation of 15 U.S.C. § 1; (3) fraud and fraudulent misrepresentation; (4) unconscionable contract and discriminatory business practices; (5) conversion; (6) spoliation of evidence; (7) unjust enrichment; and (8) breach of implied covenant of good faith and fair dealing. *Id.* at 23–30.

B. Procedural Background

On September 24, 2025, Plaintiff filed his Complaint. Dkt. 1. On October 8, 2025, attorney Bradley Justus entered his appearance on behalf of Defendants and subsequently filed a consent motion to extend deadlines. Dkts. 8, 10. The consent motion was thereafter granted and Defendants' deadline to respond to the Complaint extended. Dkt. 11.

On November 19, 2025, Mr. Justus filed a motion to appear *pro hac vice* on behalf of Mary Helen Wimberly. Dkt. 12. Two days later, that motion was granted. Dkt. 13.

On November 24, 2025, Defendants filed their Motion to Dismiss. Dkt. 14. Plaintiff sought and received an extension of time to respond and was specifically directed to respond to the Motion to Dismiss by December 10, 2025. Dkt. 19. Instead of responding to the Motion to Dismiss, Plaintiff filed a motion for an evidentiary hearing and related motion to strike. Dkts. 20, 21. He also filed a motion for leave to file a USB drive. Dkt. 23. On December 12, 2025, Defendants filed their opposition to Plaintiff's Motion. Dkt. 25. On December 16, 2025, Plaintiff

filed his reply. Dkt. 27. Plaintiff subsequently filed a number of notices of supplemental authority. Dkts. 28-31.

On May 29, 2026, Plaintiff filed a Motion for Judicial Notice. Dkt. 36. On June 11, 2026, Defendants' filed their Opposition. Dkt. 42. On June 15, 2026, Plaintiff filed his Reply. Dkt. 42. On June 29, 2026, Plaintiff filed a Notice of Supplemental Authority. Dkt. 43.[3]

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26

[3] Despite continuing to file motions and supplements with respect to the Motion to Dismiss, Plaintiff has called chambers a number of times to inquire regarding the status of the pending Motion. Although this Court may not have resolved the pending motions as quickly as Plaintiff would have preferred, the Court notes that this Division has been inundated with hundreds of habeas applications each of which requires expeditious review and each of which involves an individual in custody who desires release. Indeed, to date, this year, more than *2700* civil cases have been filed in the Alexandria Division alone. Nor does the Court's regular civil and criminal dockets stop progressing forward to take account of this new influx of cases and this District Judge has personally presided over seven criminal trials in the last year. The Court has addressed this case in due course.

(4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

III. ANALYSIS

Before analyzing the Motion to Dismiss, the Court must first address Plaintiff's Motions to Strike and for Judicial Notice. Dkts. 21, 36. The Court will address those motions and then decide the Motion to Dismiss.

A. Motion to Strike

Plaintiff moves to strike Defendants' Motion to Dismiss and an October 8 Consent Motion as "fruits of unauthorized legal practice." Dkt. 21 at 4. Plaintiff asserts that defense counsel Mary Helen Wimberly, an out-of-state attorney, practiced law in this District without authorization and did not apply for *pro hac vice* authorization until November 2025. *Id.* But, as Defendants correctly note, an appearance was entered before the Court by Bradley Justus, who is a member of the Virginia Bar. Dkt. 8. Mr. Justus signed the consent motion for extension of time. Dkt. 10. Ms. Wimberly was listed, as many out-of-state counsel are, as "*pro hac vice forthcoming*." *Id.* at 3. The Fourth Circuit has found no error in similar circumstances. *See Romero v. Meta Platforms, Inc.*, 2024 WL 3466403, at *4 (D.S.C. July 19, 2024), *aff'd*, 2024 WL 5200156 (4th Cir. Dec. 23, 2024), *cert. denied*, 145 S. Ct. 1972 (2025). In that case, the district court specifically noted that

no relief was appropriate where a motion was "electronically signed by a member of the South Carolina bar who is licensed to practice before this court." *Id.* Indeed, Ms. Wimberly's *pro hac vice* application was submitted and approved *before* the Motion to Dismiss was filed. Dkts. 12, 13. Thus, Plaintiff offers no basis on which to strike the consent motion or the Motion to Dismiss. Plaintiff fails to establish that Ms. Wimberly, who is an attorney and who has subsequently been admitted *pro hac vice*, in any way intentionally sought to avoid this Court's rules regarding out-of-state counsel. *See Bertrand v. Yellow Transp., Inc.*, 2009 WL 10694211, at *2 (M.D. Tenn. Mar. 4, 2009) (noting that "[i]t is not uncommon for corporate litigants to retain the same attorneys or same law firm in certain types of actions, nor it is uncommon that said attorneys may be from out-of-state and need to appear *pro hac vice*"); *Kaufman LLC v. Estate of Feinberg*, 2022 WL 17090302, at *3 (D. Conn. Nov. 21, 2022) ("The fact that Mr. Kaufman repeatedly consulted local counsel and eventually obtained *pro hac vice* admission once the litigation was initiated in the Southern District of New York also suggests that his conduct did not qualify as the unauthorized practice of law."). Accordingly, Plaintiff's Motion to Strike will be denied and the motion seeking an evidentiary hearing on the Motion to Strike will also be denied.[4]

---

[4] Nor has Plaintiff established that he was prejudiced by Ms. Wimberly's involvement in this case prior to her admission *pro hac vice*, where another lawyer at Ms. Wimberly's firm has indisputably always appropriately appeared in this litigation and where Ms. Wimberly was subsequently admitted. Although the Court takes Plaintiff's point that Ms. Wimberly should have moved for *pro hac vice* status more promptly, the Court sees no violation where Ms. Wimberly evidenced her intent to seek *pro hac vice* status, where she did so, and where she subsequently obtained such status. And, even without her *pro hac*, Ms. Wimberly is an attorney and admitted to practice in D.C. and in other federal district courts. Dkt. 12. Thus, where Ms. Wimberly is admitted to practice in D.C. and her communications with Plaintiff originated in D.C. Plaintiff has not established that Ms. Wimberly engaged in unauthorized practice of law *in Virginia*. Moreover, where Ms. Wimberly was a D.C. attorney, each of her statements regarding her representation of Defendants are truthful, even if she had not yet obtained *pro hac vice* status. Dkt. 27 at 9 (referring to Defendants as her "clients" and indicating her firm had been "retained to represent" Defendants).

B. Motion for Judicial Notice

In his Motion for Judicial Notice, Plaintiff seeks judicial notice of "ten certified, self-authenticating, and sworn public records." Dkt. 36 at 1. Plaintiff asserts that the records "bear directly on a threshold pleading question now before the Court: the true identity of the contracting party and real party in interest operating behind the bare designation 'YouTube' in the agreements Defendants invoke in support of dismissal." *Id.* The exhibits of which Plaintiff desire the Court take judicial notice include documents that go back almost twenty years: trademark assignments from 2007 and 2017, filings from other cases in 2019, 2024, 2026, deposition testimony from another case, and California state filings. *Id.* at 2. Plaintiff denies that he offers any of the documents for the "truth of any matter asserted therein." *Id.* at 1. Defendants oppose the motion. Dkt. 41.

To be judicially noticeable, facts must be "relevant," *Ebersole v. Kline-Perry*, 2012 WL 2673150, at *6 (E.D. Va. July 5, 2012) and they must be "not subject to reasonable dispute," Fed. R. Evid. 201(b). In the Fourth Circuit, it is well established that facts adjudicated in a prior case "do not meet either test of indisputability contained in Rule 201(b)." *United States v. Zayyad*, 741 F. 3d 452, 463-64 (4th Cir. 2014). In short, a court should not take judicial notice of "any specific factual finding, legal reasoning, or legal conclusion" from another case, as it would be "inappropriate under Federal Rule of Evidence 201(b)." *United States v. Daley*, 378 F. Supp. 3d 539, 547 (W.D. Va. 2019).

Here, it is unclear the relevance the documents of which Plaintiff desires that the Court judicially notice. Plaintiff argues that Defendants "cannot invoke 'YouTube' as a party whose litigation posture defeats relevance while refusing . . . to identify what the party legal is." Dkt. 42. But it is *Plaintiff* who identified YouTube LLC as a party defendant. *See* Dkt. 1 at 1 (listing

"YouTube LLC" as a defendant in the case caption). Moreover, as Defendants note, "neither YouTube nor Google has moved to dismiss on the ground that they are not real parties in interest or that their corporate forms render them incapable of being sued." Dkt. 41 at 3. Plaintiff asserts that information regarding the corporate structure is necessary for Plaintiff to meet his pleading obligations (Dkt. 37 at 17), but Plaintiff is the master of his own complaint and discovery into the nature of his claims is generally not appropriate until any pending motions to dismiss are resolved. *See Rader v. Nw. Fed. Credit Union*, 2024 WL 388097, at *6 n.5 (E.D. Va. Feb. 1, 2024). Accordingly, the Court will deny the Motion in this regard.

C. Motion to Dismiss

47 U.S.C. § 230 ("Section 230") provides: "No provider or user of an interactive computer service shall be treated as the *publisher or speaker of any information provided by another information content provider*." 47 U.S.C. § 230 (c)(1) (emphasis added). Section 230 further provides broad civil immunity from lawsuits for publishers based on their authority to "restrict access to or availability of material that the provider or user considers to be . . . objectionable." *See Id.* (c)(2); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). In other words, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Zeran*, 129 F.3d at 330. Plaintiff has acknowledged that "he does not challenge Google's broad platform moderation power under 47 U.S. Code § 230 of the Communications and Decency Act." Dkt. 1 ¶ 3. However, Plaintiff's claims are largely predicated on the decision to terminate his YouTube account and the videos associated with it. Nonetheless, each claim will be analyzed in turn.

i. Count I and II: Abuse of Monopoly Power (15 U.S.C. §§ 1, 2)

Defendants first seek to dismiss Counts I and II by arguing that Plaintiff lacks antitrust standing to bring a claim under the Sherman Act. Dkt. 15 at 21. To have antitrust standing, a plaintiff must plead that he suffered "an injury that the antitrust laws were intended to prevent." *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 315 (4th Cir. 2007). When determining whether Plaintiff has suffered antitrust injuries courts in this Circuit consider:

> (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm 'was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws;' (3) the directness of the alleged injury; (4) 'the existence of more direct victims' of the alleged antitrust injury; and (5) 'problems of identifying damages and apportioning them' among those directly and indirectly harmed.

*Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006). The injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Here, Plaintiff has failed to show the damages caused from the "anti-competitive" aspect of Defendant's behavior. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Plaintiff claims that his damages result from the facts that "[h]is channel was destroyed, earnings seized, videos confiscated with no right to download and migrate them to a competing platform specifically because Google's monopoly power eliminated alternatives." Dkt. 1 ¶ 57. Plaintiff's supposed injuries reflect harm to himself, as an individual, not "harm [to] the competitive process and thereby harm [to] the consumers." *Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002). As judges in this District have explained, this is "an injury caused by the antitrust violation itself, not just an injury in fact." *Glob. Tel*Link Corp. v. JACS Sols. Inc.*, 708 F. Supp. 3d 784, 796 (E.D. Va. 2023). Plaintiff has not identified an antitrust claim; rather, he has identified a contractual

issue. *See id.* at 798 (rejecting claim where "plaintiff's only injury was contractual in nature" (citing *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 615 (6th Cir. 2001)). Plaintiff has acknowledged that Defendant has immunity for terminating his channel,[5] and to the extent Plaintiff takes issues with YouTube's policy for terminated channels' earnings, his argument is appropriately placed with his state law claims—where it shall be addressed. Moreover, the only allegation that resembles an antitrust claim—that YouTube would not allow Plaintiff to download his videos or upload them to competing platforms—is unsound. YouTube has not blocked Plaintiff from uploading his videos on competing platforms, it has simply declined to provide copies of the videos Plaintiff previously uploaded to their site; that is not a restraint on competition. Accordingly, the Motion to Dismiss will be granted in this regard.[6]

ii. Count III: Fraudulent Scheme (Fraud and Misrepresentation)

Plaintiff asserts that Google has engaged in a "fraudulent scheme" by including "creators' reliance and investment while maintaining unilateral control over their relationship with millions of YPP participants." Dkt. 1 ¶ 61. The fraud, Plaintiff alleges, "operates through three interlocking deceptions": (1) portraying YouTube as independent and capable of contracting when it is really "a shell company" for Google, which "does business as YouTube without clear and conspicuous disclosure"; (2) promising "partnership" and "mutual commitment" while mandatory AdSense Terms state that the agreement "does not create any partnership; (3) XXVI Holdings characterizing

---

[5] Because this Court does not rest its decision on immunity, it will decline to engage with whether Section 230 applies to these claims or if Section 230 provides immunity for removing videos with anticompetitive animus.

[6] With respect to Count 1, Plaintiff also fails to adequately plead a market or market monopolization. Likewise, with respect to Count 2, Plaintiff fails to adequately plead concerted action or an unreasonable restraint of trade.

the YPP revenue shares as "royalties" on tax forms despite YouTube terms mandating "royalty-free" licenses." *Id.* ¶ 62.[7]

Fraud must be pleaded with particularity and "must satisfy [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)). "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). To do so, Plaintiff "must plead the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F. 3d 535, 553 (4th Cir. 2019) (quotation omitted). This information is often referred to as the who, what, when, where, and how of the alleged fraud. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Furthermore, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Plaintiff does identify some executives' public statements with their name, time, and place, and identifies some of the specific terms relating to the "partnership," but fails to plead with particularity the "how" of the alleged fraud. Dkt. 1 ¶¶ 21-26. Plaintiff also does not explain how statements identified by Plaintiff—including that "'partner' really is at the heart of the YouTube Partner Program. Because what it really means is: we succeed when you succeed"—rise beyond standard corporate puffery and buzzwords, which does not constitute fraud. *Id.* ¶ 24; *see Lambert*

[7] Plaintiff does not assert what law applies to his fraud claim in his Complaint. Dkt. 1. Defendants apply Virginia law and cases from this District. Dkt. 15 at 28-29. Thus, the Court assumes that Virginia law applies for purposes of this Motion.

*v. Downtown Garage, Inc.*, 262 Va. 707, 713 (2001) (recognizing that "[c]ommendatory statements, trade talk, or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion which cannot rightfully be relied upon"); *Tate v. Colony House Builders, Inc.*, 257 Va. 78, 84 (1999) (holding that "puffing or opinion . . . cannot form the basis of an action for constructive fraud"). Moreover, Plaintiff fails to plead his detrimental reliance on these particular statements in more than conclusory terms. *See Maaraba v. Stanley Convergent Sec. Solutions, Inc.*, 2014 WL 1255210, at *2 (E.D. Va. Mar. 25, 2014). Thus, Count III will be dismissed for failing to state a claim.

iii. Count IV: Unconscionable Contract and Discriminatory Business Practices

In Count IV, Plaintiff asserts that the YPP agreement is "procedurally and substantively unconscionable," meaning it is unenforceable under District of Columbia law. Dkt. 1 ¶ 65. It is not clear from his Complaint why Plaintiff thinks District of Columbia law should apply—this Court and Plaintiff reside in Virginia, and the agreement's choice-of-law provisions state that all claims are governed by California law. Dkt. 2-22 at 9. As Defendant properly notes, "Virginia conflicts of law rules generally honor contractual choice of law provisions." *Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 787 (4th Cir. 1987); Dkt. 25 at 23. Plaintiff also argues that the terms violate the implied covenant of good faith and fair dealing and constitutes a discriminatory business practice. *Id.* ¶¶ 64 , 68. The Court addresses both of these arguments in turn.

Plaintiff asserts that the contract is both substantively and procedurally unconscionable, but under California law, unconscionability is not a cause of action. *See Dean Witter Reynolds, Inc. v. Superior Ct.*, 211 Cal. App. 3d 758, 766 (Ct. App. 1989) ("Civil Code section 1670.5 does not create an affirmative cause of action but merely codifies the defense of unconscionability"); *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1206 (9th Cir. 2010) (recognizing that a "plaintiff cannot

assert unconscionability as an independent claim for relief"); *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1164 (N.D. Cal. 2011) (holding that "unconscionability under Cal. Civ. Code § 1670.5 is not an affirmative claim, but merely a defense to the enforcement of a contract"). Therefore, as Plaintiff asserts unconscionability as a cause of action, the unconscionability claim under this Count will be dismissed. Furthermore, to the extent Plaintiff argues unconscionability more generally, Defendants correctly note that courts in California and operating under Plaintiff's preferred governing law (D.C.) have found that the applicable terms of service related to YouTube do not shock the conscience. *See Ray v. Google LLC*, 2023 WL 7305048, at *8 (N.D. Cal. Nov. 6, 2023) (dismissing complaint by YPP participant), *aff'd*, 2025 WL 2058822 (9th Cir. July 23, 2025) (holding that "YouTube's TOS are not so one-sided as to 'shock the conscience'"); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64 (D.D.C. 2014) (holding that there are "no issues of unconscionability with YouTube's Terms of Service" and that "[h]aving taken advantage of YouTube's free services, Plaintiffs cannot complain that the terms allowing them to do so are unenforceable").

Plaintiff also seems to claim that what he alleges as "denial of contract access" and "seizure of earned funds" constitutes discrimination that "violates the implied covenant of good faith and fair dealing inherent in all contracts under Virginia law." Dkt. 1 ¶¶ 67, 68. As indicated *supra,* Virginia law does not apply here—California law does. Moreover, it is not clear what injury Plaintiff suffered in this regard, as Plaintiff alleges that he had access to the YPP contracts. Therefore, this claim will also be dismissed.

iv. Count V: Conversion

Plaintiff also asserts a cause of action for conversion, in that Defendants allegedly converted his property "without authority or justification." Dkt. 1 ¶ 71. The property at issue is:

(i) "over $1,000 in earned advertising revenue"; (ii) 320 videos "documenting human rights abuses valued conservatively at $5,000"; (iii) analytics data "essential for financial records and business operations"; and (iv) Plaintiff's YouTube channel "as business asset with 65,000 subscribers." *Id.* As California law applies to state law claims "arising out of or relating to" YouTube or its terms, this Court applies California law to this claim. Dkt. 2-22 at 9.

To state a claim for conversion, Plaintiff must allege "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Santa Clara Valley Water Dist. v. Eisenberg*, 117 Cal. App. 5th 714, 744, 636 (2025). Conversion, which has traditionally been limited to tangible personal property, can be an actionable claim for intangible things like digital assets. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). The parties' dispute lies in whether Plaintiff has the "ownership or right to" possess the property at issue, and whether Defendants violated those purported rights. Plaintiff does not make anything more than conclusory allegations that Defendants converted the relevant property, which he had "property interests in," "without legal authority or justification." Dkt. 1 ¶ 71. Plaintiff has not plausibly pleaded that he owns or had to the right to any of the property at issue, so therefore the Count will be dismissed. Moreover, with respect to Plaintiff's claims to his alleged earnings, courts regularly recognize that "a claim for conversion of funds will not lie when there is only a failure to repay by the defendant." *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, 2016 WL 740061, at *9 (E.D. Va. Feb. 25, 2016); *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (holding that a "mere contractual right of payment, without more, will not suffice" to state a conversion claim).

Furthermore, Plaintiff has not plausibly alleged the second element, with respect to the YouTube channel, as nowhere in the terms Plaintiff agreed to require the company to store or host

the content. Dkt. 15 at 34. *See Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, at *7 (N.D. Cal. Sept. 4, 2023), *aff'd*, 2024 WL 2745208 (9th Cir. May 29, 2024) (holding that YouTube's "Agreement did not require YouTube to host content" after a plaintiff sued for conversion for retaining the content after his channel was banned from the platform and dismissing a conversion claim). And, to the extent that the claim is based on the funds, Plaintiff has not plausibly alleged that Defendants' disposition of any funds was wrongful, such that it suffices to support a conversion claim. As Plaintiff himself pleads, the money is alleged to have constituted estimated earnings that were subsequently returned to advertisers, and Plaintiff does not adequately support the wrongfulness of such conduct. Accordingly, the Motion to Dismiss will also be dismissed with respect to the conversion claim.

v. Count VI: Spoilation of Evidence

Plaintiff alleges that Defendants "had a duty to preserve Plaintiff's contract, data, videos, and associated business record" because Plaintiff "explicitly notified Defendants of intention to take legal action." Dkt. 1 ¶ 75. He further alleges that Defendants "destroyed it through automated process" and denied Plaintiff "access to the contract he allegedly violated." Dkt. 1 ¶ 75. There is, however, no independent cause of action for spoilation of evidence under either California or Virginia law. *See Cedars-Sinai Med. Ctr. v. Superior Ct.*, 18 Cal. 4th 1, 17 (1998) (holding "there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant"); *Atl. Diving Supply, Inc. v. Komornik*, 113 Va. Cir. 179 (2024) ("spoliation itself does not give rise to an independent action"). Therefore, this Count must be dismissed for failing to state a claim.

vi. Count VII: Unjust Enrichment

Plaintiff alleges that Defendants "unjustly retained benefits at Plaintiffs and millions of creators' expense through conduct that equity and good conscience cannot tolerate." Dkt. 1 ¶ 78. Plaintiffs allege that Defendants did so through "(a) systematic 'forfeiture' of creator earnings potentially running into billions; (b) perpetual royalty-free licenses to billions of videos worth untold billions in AI training data; (c) prevention of content migration maintaining monopoly value; (d) exploitation of creators through fraudulent partnership representations." *Id.* As with the previous count, California does not recognize unjust enrichment as a cause of action. *See City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022) (there is no cause of action in California labeled "unjust enrichment"). Even if Plaintiff could assert such a claim, it would fail, because as Defendants note unjust enrichment is unavailable where there is a governing contract. *See Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. App'x 496, 503 (4th Cir. 2012) (explaining, under Virginia law, that "unjust enrichment is unavailable . . . when an express contract exists that governs payment"). Therefore, this Count will also be dismissed.

vii. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts this claim under Virginia law. Dkt. 1 ¶ 79. As discussed *supra*, Virginia law does not apply. In any event, Plaintiff has not plausibly alleged a breach of the implied covenant of good faith and fair dealing, because Plaintiff asserts that Defendants followed the terms of the contract. *See Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996) (recognizing that, where parties to a contract create valid and binding rights, one party does not breach "by exercising such rights"); *accord Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 965 (N.D. Cal. 2015) (holding that "a party cannot breach the implied covenant by engaging in acts or conduct consistent with the express provisions of a contract").

Here, the alleged breaches that Plaintiff asserts are contemplated by the contracts he attaches. *Contrast* Dkt. 1 ¶ 80 *with* Dkt. 1-18 at 2. Accordingly, this claim will also be dismissed.

## IV. CONCLUSION

In sum, Plaintiff has failed to plausibly allege any claim asserted in his Complaint. Furthermore, his motion to strike and his motion for judicial notice are not well taken. The Court cannot say, however, at this stage that permitting amendment would be futile. Accordingly, it is hereby

ORDERED that the Motion to Strike (Dkt. 21) is DENIED; and it is

FURTHER ORDERED that the Motion for an Evidentiary Hearing (Dkt. 20) is DENIED; and it is

FURTHER ORDERED that the Motion for Judicial Notice (Dkt. 36) is DENIED; and it is

FURTHER ORDERED that the Motion to Dismiss (Dkt. 14) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any Amended Complaint with THIRTY (30) DAYS of the issuance of this Memorandum Opinion and Order. Plaintiff is hereby WARNED that, if Plaintiff fails to file an Amended Complaint within this time period, the Court may dismiss this case for failure to prosecute and failure to abide by Court orders pursuant to Federal Rule of Civil Procedure 41.

The Clerk is directed to forward copies of this Order to all counsel of record and to Plaintiff at his address.

It is SO ORDERED.

Alexandria, Virginia
September 9, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge